The next case will be 075018, Charles Bice v. United States. This case is about the trial courts substituting its judgment for the agencies in an administrative records review case. Here, the Bureau of Justice Assistance, the BJA, made factual findings based upon the administrative record, and the trial court essentially overruled those factual findings and replaced them with its own. To whom do we owe deference? To the agency, Your Honor. The trial court reviews the agency's determinations with a deferential standard review, and when this court reviews the trial court's decision, I believe it's in Chacon, the court says, it applies that deferential standard anew. We've said that in the Greeley case, too. Yes, Your Honor. Yes, Your Honor. And many other cases have said that. We've said that as well. And essentially, it is an APA-like standard review, the substantial evidence test. And that is, of course, the standard which compels a determination that the BJA did the right thing in this case. Or they certainly did so in terms of what the court could review. There are essentially three allegations of error. The first is the most plain and critical one. That is about the court substituting its judgments for the agency's in review of certain evidentiary determinations. The second is the court's determination, the trial court's determination, that the BJA made an error by not applying the Alabama State Court of Compensation's determinations to make its conclusions. And the third was, if there had been error, the trial court's making its own factual determinations and being very explicit about so, and entering judgment in favor of this device, rather than remanding it back to the BJA to make its determinations. The three issues regarding factual determinations made by the BJA. And again, because he thought they weren't listening. Well, that is what the trial court said, Your Honor. But nevertheless, that is just because a trial court judge felt that way doesn't mean that he had the authority to do so. In fact, it's very clear from this court's decisions. I could raise it with me from more of a chaconne, amber message, to the most recent cases, saying as much, that the court's review is quite limited. And it does not get to sit as a super agency and make the factual determinations if it's not satisfied with what the trial court responded to its first remanding. And that's precisely what happened here. After all, there was only just one remand from the trial court. Originally, there had been a lawsuit filed back in 1999, but that was the parties agreed to allow new evidence to be submitted, so it wasn't as if the court had given instructions which should have been ignored or acted in bad faith by the agency. In fact, there's really no suggestion whatsoever that there was any bad faith by the agency here. It followed its instructions the best it could. And it's been, of course, that its determination was more, in fact, appropriate and supported by the evidence. Well, but if the agency's determination as to causal connection is clearly wrong or clearly erroneous, the court has the... You agree the court then has the authority to overrule it? It has the authority to tell the agency that it had made an error and to remand it back to correct that error. And then they do that here, originally? Originally, there was a suggestion that the agency had not considered certain evidence. In fact, the trial court's original remand in this case was that the agency had applied an inappropriate factual gate, as it were, to impart objective evidence when you should be able to consider opinion evidence and things of that nature and sort of set it back to the agency to reconsider the evidence anew. Not that its decision was wrong. Not that the decision necessarily was going to lead to a determination that Mr. Bison's entitled to, but that it had used the wrong evidentiary tools in evaluating Mr. Bison's original request. Because at the end of the day, what the agency was looking at was whether sufficient evidence had been presented as to the burden of proof the plaintiff has, at least as to the first prong, right? Yes, Your Honor. On a prima facie case. That's correct, Your Honor. And the question was, with the presentation by the plaintiff or the claimant of the doctor's reports, the treating opinion report that is submitted, the hospitalization, the symptomology in the hospital, whether taking that into account, whether as a matter of law the plaintiff had presented a prima facie case. And if the board makes that interpretation in a way that is not consistent with the law, then they're not entitled to the deference you're talking about. Well, Your Honor, there is a difference between who's actually reading those documents and interpreting them. Of course, if there is a regulation, for example, the ones that the trial court initially suggested in its first readout were wrongfully interpreted by the BJA, yes, they're required to redo it anew. However, getting a prima facie case only gets you halfway there, only part way there. Because again, after just a prima facie case, it does not make the claimant automatically entitled to pay. True. But isn't really what was decided here that the plaintiff had, or the claimant had not made a prima facie case? Because had the claimant done so, then the question becomes is the claimant entitled to the reasonable doubt standard when you go from the burden of production to the burden of persuasion? Right? That's right. Well, Your Honor, if there had been a prima facie case, then the BJA would have been entitled to weigh that burden of proof, that is, to weigh the reasonable doubt standard itself. And then come to its conclusion. It might well have determined, yes, he has met the burden, he has met this burden, and you're going to get the award. It may well have also concluded that even including these documents, when you weigh the AFIP documents, the Armed Forces Institute of Apology, you still get a different result, even with the reasonable doubt standard applied. And that is something the BJA was never able to do in this case. There was never the opportunity to do that because it found, first, there's no prima facie case made. Therefore, again, even if it's how a person... Well, how is that determination correct as a matter of law, that there was no prima facie case made on this record? Oh, easily. There were four affidavits, all unspeculative, none of them with any basis to sort of explain why they came to conclusions. This is just like Greeley. In Greeley, there are three affidavits, two of which came to the bare conclusion that this person died of smoke inhalation. These were treating doctors, physicians, who looked at the documents and said, yes, smoke inhalation killed this person, but they had no reason for it. And this court upheld the BJA's determination that these were speculative affidavits and did not raise the prima facie case. And your argument is that there were other documents in the file that said the opposite, and it's not the job of this court to weigh their accuracy. Precisely, Your Honor. More than the job of the trial court. And in fact... What is the trial court supposed to do? It is supposed to make sure that the agency doesn't act in an arbitrary and capricious way, that it follows its own regulations and rules, which it did, and to make sure there was some substantial evidence supporting this determination, which again is the case here. But was there substantial evidence? Yes. Because you can look at these documents and understand why the hearing officer came to the conclusion as supported ultimately by the attorney of the BJA, the director of the BJA, that these documents were speculative. They said, essentially, that carbon monoxide and the stress and strain of the fire probably caused the myocardial infarct, the heart attack, which led to her death. Well, this court in Spokowski and Morrow has essentially told us that causing a heart attack, when you've got a pre-existing injury, a heart attack that could happen anyway, just triggering it, does not get you in a time of parole meeting. But that's the way in on the second prong, on the proximal causation, not on the prima facie case. I would say not, Your Honor, because, respectfully, the prima facie case must be that there's a proximal causation. You must make a prima facie case that there's a proximal cause here. Well, isn't the prima facie case just production of sufficient evidence that gets you to now discuss whether or not there's proximal cause? In other words, the burden of going forward, you come in with evidence, you come in with your experts, your experts opine this, the other experts opine that. Now you get to the next question, is that sufficient to establish proximal cause? Yes or no? Respectfully, Your Honor, you must have a prima facie case to have met the burden of proof that the person was proximally killed in a life of duty. The prima facie case must prove, or must attempt to prove, that there is a proximal cause of death. Isn't a doctor's opinion report, a treating doctor's opinion report, based on the temporal situation here, where she had the first heart attack immediately thereafter, based on the symptomology evidence in the hospital, based on his treatment, and then the temporal relation of the death, the doctor makes an opinion that it's related to the smoking relation. That opinion may be credible or not credible, but it is a basis from which a reasonable fact finder could find that. It is a basis from which a reasonable fact finder could also find that it's speculative. Again, the expert opinion can be set aside, just as it was in Greeley. Just as in Greeley, where there is no prima facie case, despite expert opinion, come to the very conclusions that smoking relation caused the death, just like we have here. And in fact, if you look at these documents closely, if you look at these affidavits of Dr. Randall and Coleman, the step epidemic, that they are all almost identical, and all almost come to the same conclusion, essentially saying that the smoking relation essentially treated her heart attack, which the AFIP agrees that the actual heart attack occurring at this time, at this moment, probably was a result of the stress and strain of fighting the fire, perhaps smoking relation, perhaps carbon dioxide relation. And that is not enough. And it is reasonable for the agency. It is certainly within... Greeley is a little bit different in this case. Greeley, at least the facts, the court, this court has found, the court below, that the firefighter had been wearing a breathing apparatus while fighting the fire. There was no evidence at all that he had inhaled any smoke. That's not the situation here. Here, admittedly, she inhaled smoke for over two and a half hours. Greeley is different in that way.  where the court relied upon three affidavits of experts who came to the very conclusion that this person died of smoking relation. And the difference actually, really, is to the advantage of the government. Because, really, there was no evidence whatsoever of a pre-existing heart condition. And, in fact, there is an autopsy where they found that there was no pre-existing heart condition and things of that nature, which led more support to the findings of the doctors in those cases. But the gravamen, Greeley, was that there was no factual underpinning to the claim of the expert that he had died of smoke inhalation. Because there was a finding that no smoke inhalation ever took place. Here, it's different. You have the smoke inhalation. Then the question is whether or not it was a contributing factor or not. And then the experts come into the picture. Not true. But the difference, Your Honor, is that in Greeley, whether or not there was smoke inhalation, just as here, whether or not there was smoke inhalation, there was no indication whatsoever of any amount of carbon monoxide that was inhaled by this firefighter. That is, we know that she probably inhaled some smoke. And smoke usually has carbon monoxide. However... Why don't you save your rebuttal? You used most of it. And I will do that. Thank you. Mr. McGonigal? Good morning, Your Honor. Next, please, the Court. This appeal hinges on two questions. First of all, whether or not the agency was free to ignore the decision of the Court of Claims in Bice 1. And secondly, whether or not, nevertheless, the agency followed that ruling. And the answer to both questions is clearly no. I'll take the second question first. In Bice 1, the Court of Claims ruled, as a matter of law, that the agency had to consider the four medical affidavits. The agency's response to that was to give those affidavits no weight whatsoever. When the agency says that it considered the four affidavits, that's pure ipsy-dexy. The Court said, you must consider the affidavits. The agency's response was, okay, we've considered them, but we find that there's no evidence whatsoever. And that's just a plan of words. That's a contaminationist conduct. That's the agency defying the legitimate mandate of the Court of Claims. How about the argument that they were merely conclusory? Your Honor, what the agency is looking for is quantifiable evidence. They want to know precisely the amount of carbon monoxide that Mrs. Bice inhaled at that fire. And that information will never be known because the medical equipment at the hospital was not working that day. It would have measured that. Basically, you had to rely on the treating doctor, with experience in this field, to determine if the amount that would have been ingested in a two-and-a-half-hour fire would have been enough to cause what happened to Mrs. Bice. And we're dealing here with the treating physician, with the surgeon who was the surgeon for Mrs. Bice, also her cardiologist, plus the fourth expert. We're not dealing with doctors who were sort of just shopped around by some lawyer looking to support a theory. These were the treating physicians, basically. And once those affidavits are accepted and once they're given any weight at all, the agency is required to apply Section 32.4 of the regulations as they existed at that time. And the reasonable doubt standard has to come in. And that was another finding in Bice 1 is that you're going to have to apply 32.4 of your own regulations. They didn't do that. The agency, when Bice 1 was brought down, the agency had the choice. They could appeal Bice 1, appeal the legal findings that were made there, and perhaps had those overturned. But they didn't do that. What they chose instead was to go through the motions of applying that, and they didn't even go through the motions of applying it. They ignored the four affidavits, which are key to this case, and they failed to apply 32.4. 32.4 of their regulations has since been taken off the books in the recent revision of their regulations because it was causing the agency so many problems. They didn't want that rule anymore. But that's the rule that applies here. The rule is that once a prima facie case is made, that they have to give the benefit of the doubt to the claimant, and they did not do that in this case. And for the agency to insist that there was no prima facie case here defies logic. I don't believe that there is a court in this country if they were faced with a motion for summary judgment in a medical type of case where they had four affidavits from the medical doctors that would grant summary judgment in that kind of case, that they would have at least to have had to go to the next step. Any court would have found that, at the very least, is a prima facie case. And the agency is then required to apply 32.4. And what you have here is this case has been in the system for over ten years now. The case had already been fully heard by the Court of Claims. The Court of Claims gets this case back a second time. All of its legal conclusions have been effectively ignored by the agency. And at that point, the court has no choice but to apply the established facts to the agency's own jurisprudence and come up with the only conclusions that were available to it. In Bice 1, page 431, the court said that the regulations certainly do not require objective or empirical evidence in order to prove exposure to smoke and carbon monoxide. And whether or not that was right or not, that's the law of the case here because they did not appeal that legal finding. And instead, what happened is the agency came back and basically threw it all out and says, we want empirical evidence. Well, isn't that, though, akin to a trial court saying the opinions of the claimants' experts are net opinions? They're not supported or conclusive, as it was called. And in that situation, a trial court could grant summary judgments, right? Well, I don't think so. This isn't the case, as in Greeley, where you had an autopsy that proved otherwise, that you had evidence that there was no smoke inhalation at the beginning. Basically, you've got three of the doctors who basically treated Mrs. Bice, and you have the fact that she was fighting in the smoke for two and a half hours. And I think a doctor can conclude that she would have inhaled enough smoke at that point to have suffered fatal smoke inhalation. Whether or not that finding... You know, if the agency had processed this claim properly, they might have found differently. But the plain fact is they didn't appeal that, and they haven't processed this claim to fail. And I... The problem right now is that we're looking at the integrity of the whole process of judicial review here, because if the agency's free to ignore the decisions in Bice 1, all of the legal findings that were made in Bice 1, what role does the court of claims have to play in these kinds of cases? I mean, if they were coming in with, yes, the rule says that this court has... Well, that's always a problem with a second-level court having to defer to fact findings. The claims court hears vaccine cases. We hear them after that, and there's a very deferential standard with respect to the special masters. We see it in international trade cases. And so that's not a new problem. What about these letters which seem to refute, or purport to refute, the evidence that she died of smoke inhalation? The letter from Joyce Lappa. We cannot determine what role smoke inhalation played. From Dr. Spencer. Your Honor, there are three reports that were prepared by the Armed Forces Institute of Pathology, and the agency was prepared at one time or another to rely on any one of the three. Whether or not there's substantial evidence is an open question. I would point out, however, that in two of those reports, these were all done on a review of the records. None of these doctors ever laid eyes on Mrs. Weiss. And in two of those reports, the doctors didn't even get the date of the fire director. But did her doctors see her right after she suffered the heart attack? I'm not sure which doctors would have seen her. The surgeon would not have seen her at that time. They're talking about her prior condition. And as far as the prior condition, she wasn't even aware she had this condition when she answered the call of duty that day. This was a woman who was able to fight a fire for two and a half hours. What I'm getting at is there are opinions of some merit on both sides. So doesn't that lead to deference to the fact finder, the agency? Only if the agency had met all three parts of the Chaslon test. The third part of that test is substantial evidence, and that, I admit, is an open question, if you were basically weighing the two sets of experts against each other. But the other two parts of that test is the arbitrary and capricious and whether or not they were following their own regulations. And the court claims it's found, and I believe this court should also find, that throwing out all four of those affidavits because they don't have a number attached to them, they don't have some blood gas level in there, throwing all four of them out effectively was arbitrary and capricious behavior. And on that alone, the agency's violated Chaslon. But the second part of the test is, did they follow their regulations? They basically ignored 32.4. They've been trying to avoid that by basically saying, you haven't made a prima facie case. And I think that unless you find that all four of those affidavits are totally phony, there's just no way that that is going to hold up. This is not the kind of case as in Groff or Amber Messick where it turns on the definition of a particular term in the regulation so we're not dealing with a classic kind of Chevron deference. Basically, the court made legal findings below on how the evidence was to be weighed and when the light burden of proof was to be applied. The agency did not appeal that, and that's basically the glory of the case here. This case can be decided on very limited narrow grounds. 32.4, they have to apply that. It doesn't exist anymore, but for this case they have to apply that. And they were required to pay attention to what the court said in Vice 1. Otherwise, I don't see what the court claims has any role whatsoever in deciding these cases and basically this court would be in a position of having to hear all of these cases is the first level of judicial review. Thank you. If I could, there are no further questions. If I could reserve my remaining time for rebuttal. Well, you're not entitled to rebuttal. The government will have rebuttal. I'm not sure what my... Well, if you had nothing further to say, you can just relinquish your time. I would just point out, as the court pointed out below, that in Southern California Edison, this court set out standards for when a remand order is appealable. This is a case very similar to the Demutias case. Vice 1 was appealable. If the court got wrong men, that was the time for the agency to appeal it. They failed to do that and now it has to follow those legal... Well, you're entitled to tell us what you want to tell us, but you're not entitled to tell us three or two or three times, so don't just use up your time. Nothing new, you can sit down. Thank you very much. All right, thank you very much. Mr. Cownie? Yes, Your Honor. Just a few short points. And the first is that there never was a requirement by the BJA that there had to be a number attached to the affidavits of the physicians in order to make them reliable or responsible or anything of that nature. There had to be a reason. There certainly never could be a reason. And the BJA said that back in its first hearing officers' opinions back in 2002. But it didn't require there to be a number. It merely said we need to know why. It can't be merely conclusory. There could be other reasons. There could be an explanation that based upon what I saw, because she acted in this way, which is inconsistent with a heart attack as opposed to carbon dioxide... But did the agency violate the remand order? Not at all, Your Honor. Because the remand order essentially said thou shall not have a requirement for objective evidence. That's fine. They didn't apply that. It said you should not ignore the state agency's determination. And it explicitly considered the state agency's consideration. Essentially, if it were that the remand order said we want you to reconsider something, the agency did that. Well, just passing their hand over, it isn't really a consideration. I mean, it doesn't show in the papers that it made any difference. Well, they need to show that it's... It's a paltry... What consideration did they give to the workers' compensation board and to the three affidavits other than what they had already done the first time around? Well, for the three affidavits, the trial court was under the impression that they... Actually, four affidavits. The trial court said it was under the impression that it required a numerical number to be applied to those affidavits in order for it to give them any weight. And the court said, oh, no. The board member, BJA, said, no. We know that. And we'll take a look at them directly and look at what they say. And it's been several pages discussing them and comparing them with, say, the AFIP information. So it wasn't just a hand wave in saying that we're not considering it or we're just going to say... The AFIP... The Armed Forces Institute of Pathology weren't able to determine anything. That's correct. And what they determined was that it was indeterminable. That there was no evidence directing a finding of carbon monoxide poisoning. In fact, that the evidence suggested there is arteriosclerotic vascular disease, ASCDD, which is what kills most people in America. And, again, if you look at the affidavits and you read them closely and carefully, it's very clear that they're saying there's causation because it triggered the particular heart attack that she had. Now, this court has said that triggering a heart attack, which would have otherwise occurred in Iran, doesn't get you a time of relief under the PSRB. And that is not exactly the case here. Okay. Thank you. Case is submitted.